Katz v Board of Mgrs. of Stirling Cove Condominium Assn. (2022 NY Slip Op 00033)





Katz v Board of Mgrs. of Stirling Cove Condominium Assn.


2022 NY Slip Op 00033


Decided on January 5, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 5, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
COLLEEN D. DUFFY
FRANCESCA E. CONNOLLY
SYLVIA O. HINDS-RADIX, JJ.


2019-00048
 (Index No. 612471/15)

[*1]Loretta Katz, appellant, 
v
Board of Managers of Stirling Cove Condominium Association, respondent.


Foreht Associates, LLP, New York, NY (Stephen R. Foreht of counsel), for appellant.
Miranda Sambursky Slone Sklarin Verveniotis LLP, Mineola, NY (Maurizio Savoiardo and Taimur Alamgir of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for conversion, the plaintiff appeals from an order of the Supreme Court, Suffolk County (Joseph Farneti, J.), dated November 14, 2018. The order granted the defendant's motion for summary judgment dismissing the complaint.
ORDERED that the order is affirmed, with costs.
The plaintiff is the owner of a condominium unit in the Stirling Cove Condominium complex, which is governed and managed by the defendant, Board of Managers of Stirling Cove Condominium Association (hereinafter the defendant Board). As a condominium owner, the plaintiff was assigned the use of one of the condominium complex's boat slips, designated slip numbered 50, which was included in the conveyance in accordance with the offering plan which provided that she had "the exclusive use of one boat slip." In 2014, the dock was reconfigured, reducing the width of the plaintiff's slip.
In 2015, the plaintiff commenced this action against the defendant Board, inter alia, to recover damages for conversion. The defendant Board moved for summary judgment dismissing the complaint, arguing that it was shielded from liability because the decision to reconfigure the dock was authorized by the condominium complex's bylaws and was made by it pursuant to its discretion under the business judgment rule.
In support of the motion, the defendant Board submitted, inter alia, the affidavit of its general manager. He attested that in 2011, an owner of an adjoining property notified the defendant Board that the boat docked in slip numbered 51 was encroaching into its waters. The encroachment was discussed at the defendant Board's meeting of June 18, 2011, and the owner of the boat in that slip was advised to move the boat to a different slip.
The general manager further attested that in October 2012, Hurricane Sandy caused severe damages to the bulkhead connecting with boat slips numbered 42 through 51, and in or about December 2012, the defendant Board solicited bids to repair the bulkhead and determined that in conjunction with the repair of the bulkhead, it was appropriate to remedy the encroachment of boat slip numbered 51 into the adjoining property owner's waters. The general manager further stated that "[t]o resolve the encroachment, it was decided to move the dock ramp separating slips #50 and #51 approximately three (3) feet away" from the adjoining property owner's waters.
The general manager received bids to perform the work, which was performed at a cost of $1,466,44. Since the cost of the work did not exceed $5,000, the bylaws authorized the defendant Board to make that alteration without the approval of a majority of the condominium homeowners. As a result of that alteration, the width of slip numbered 51 was increased by approximately three feet, and the width of slips numbered 49 and 50 were reduced by a total of approximately three feet, or one and one-half feet per slip.
The plaintiff, in opposition to the motion, contended that the decision to reconfigure her boat slip was not reflected in the minutes of the meetings of the defendant Board. However, the minutes of the March 9, 2013 meeting discussed storm damage repairs and how to finance those repairs. The solicitation of bids and bulkhead repair were discussed at the June 29, 2013 meeting, and it was noted in the minutes of that meeting, that "as stated earlier" the general manager "received three proposals for the Bulkhead repair and was authorized to select and begin working with the best, and lowest cost, of the three." The minutes of the July 25, 2015 meeting state that the defendant Board discussed the reconfiguration of the plaintiff's boat slip numbered 50. At that meeting, the defendant Board noted that "some changes to slip #51 had to be made since it encroached into the space of the property owners near the old Sharky's lot. That caused a bit of change to [the plaintiff's] slip #50."
The Supreme Court granted the motion, and the plaintiff appeals.
"In reviewing a condominium board's actions, courts should apply the business judgment rule" (Board of Mgrs. of Fishkill Woods Condominium v Gottlieb, 184 AD3d 785, 789). "Under the business judgment rule, the court's inquiry is limited to whether the board acted within the scope of its authority under the bylaws (a necessary threshold inquiry) and whether the action was taken in good faith to further a legitimate interest of the condominium. Absent a showing of fraud, self-dealing or unconscionability, the court's inquiry is so limited and it will not inquire as to the wisdom or soundness of the business decision" (id. at 789 [internal quotation marks omitted]; see Board of Mgrs. of Vil. Mall at Hillcrest Condominium v Banerjee, 188 AD3d 777, 779).
The defendant Board established its prima facie entitlement to judgment as a matter of law by showing that it acted within the scope of its authority under Article III, Section 5(a)(12) of the condominium complex's bylaws and that its action was taken in good faith to further a legitimate interest of the condominium complex. The affidavit of the general manager and the minutes of the defendant Board's meetings established that the defendant Board authorized the general manager to make the relevant repairs, and was aware of the effect of those repairs on the plaintiff's boat slip. Although the defendant Board did not specify in its minutes every alteration to be performed in detail, the affidavit and minutes submitted by the defendant Board are sufficient to demonstrate its determination with respect to slip numbered 50 and its general manager's actions pursuant thereto. Further, there is no indication in this record that the alteration was not within the defendant Board's scope of authority. Moreover, it is clear that the affidavit of the general manager was submitted on behalf of the defendant Board and with personal knowledge of the facts.
In opposition, the plaintiff failed to raise a triable issue of fact.
Accordingly, the Supreme Court properly granted the defendant Board's motion for summary judgment dismissing the complaint.
AUSTIN, J.P., CONNOLLY and HINDS-RADIX, JJ., concur.
DUFFY, J., dissents, and votes to reverse the order, on the law, and deny the defendant's motion for summary judgment dismissing the complaint, with the following memorandum:
I disagree with my colleagues' determination that the defendant Board of Managers of Stirling Cove Condominium Association (hereinafter the Board) demonstrated as a matter of law that the business judgment rule applies to bar the plaintiff's claims. Under the business judgment rule, a necessary threshold inquiry is whether the board acted within the scope of its authority under the bylaws and whether the action was taken in good faith to further a legitimate interest of the condominium (see Schoninger v Yardarm Beach Homeowners' Assn., 134 AD2d 1, 9; see also [*2]Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 538). Here, as set forth below, the Board failed to show, prima facie, that it satisfied this first prong—that it acted pursuant to the bylaws. Accordingly, I would reverse and deny the Board's motion for summary judgment dismissing the complaint.
Background
In 2015, the plaintiff, the owner of a residential unit in a condominium complex in Suffolk County (hereinafter the complex), commenced this action against the Board, the governing entity of the complex, to recover damages for conversion, breach of fiduciary duty, and related causes of action, and for injunctive relief arising out of a dispute about the boat slip assigned to the plaintiff in connection with her ownership of a residence in the complex.
The plaintiff alleged that, when she purchased her condominium unit in 1989, she was also deeded an interest in a boat slip—slip 50 (hereinafter the plaintiff's boat slip). The plaintiff also alleged that the deed expressly identified the boat slip as being included in the conveyance, and that the complex's offering plan provided that she had "the exclusive use of one boat slip as an irrevocably restricted common element." She further alleged that, in 2014, the dock adjacent to the plaintiff's boat slip was moved—altering the width of her boat slip and causing it to be reduced and limiting the size of the watercraft that she could moor there. The plaintiff also alleged, inter alia, that the decision to move the dock was not made in accordance with the bylaws governing the Board and was outside of the Board's authority.
The Board thereafter moved for summary judgment dismissing the complaint, on the ground, inter alia, that it was shielded from liability by the business judgment rule. In an order dated November 14, 2018, the Supreme Court granted the Board's motion and directed dismissal of the complaint. The plaintiff appeals.
Standard of Law
"[T]he business judgment rule provides that a court should defer to a . . . board's determination '[s]o long as the board acts for the purposes of the [condominium], within the scope of its authority and in good faith'" (40 W. 67th St. v Pullman, 100 NY2d 147, 153, quoting Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d at 538; see Kaung v Board of Mgrs. of Biltmore Towers Condominium Assn., 70 AD3d 1004, 1006). Although the rule protects a board's business decisions and managerial authority from indiscriminate attack, it also "permits review of improper decisions, as when the challenger demonstrates that the board's action has no legitimate relationship to the welfare of the [condominium], deliberately singles out individuals for harmful treatment, is taken without notice or consideration of the relevant facts, or is beyond the scope of the board's authority" (Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d at 540; see Quinones v Board of Mgrs. of Regalwalk Condominium I, 242 AD2d 52, 54). "The business judgment rule does not apply when a . . . . board acts outside the scope of its authority or violates its own governing documents" (Matter of Cohan v Board of Directors of 700 Shore Rd. Waters Edge, Inc., 108 AD3d 697, 699; see Matter of Beckerman v Lattingtown Harbor Prop., Owners Assn., Inc., 183 AD3d 821, 823). Indeed, the applicability of the business judgment rule is often an issue of fact precluding summary disposition (see Sean Hayes, Understanding New York's Business Judgment Rule, The New York Law Blog, https://www.thenewyorklawblog.com/2018/08/ny-business-judgment-rule.html [Aug. 30, 2018] [the business judgment rule comes up when there is a dispute between stakeholders and homeowner's associations and condominium/co-op boards where "([t])hese kinds of cases turn on the facts"]; see also Gerard Mantese & Emily Fields, The Business Judgment Rule, Michigan Bar Journal 30, 33, https://michbar.org/file/barjournal/article/documents/pdf4article3852.pdf [Jan. 2020] ["([e])ven when the rule applies, it is not a talisman that prevents scrutiny into whether directors have acted reasonably and in good faith" which depends on the facts of the particular transaction]).
The Board's Motion
Here, the Board's motion for summary judgment should have been denied as the Board failed to establish, prima facie, that it made the decision to alter the plaintiff's boat slip or that the decision was made consistent with the procedures set forth in the bylaws governing the complex [*3]such that the business judgment rule would be applicable, and it did not show any other basis for awarding summary judgment dismissing the complaint (see Kaung v Board of Mgrs. of Biltmore Towers Condominium Assn., 70 AD3d at 1005-1006; see also Matter of Cohan v Board of Directors of 700 Shore Rd. Waters Edge, Inc., 108 AD3d at 699).
Although the Board submitted in support of its motion, inter alia, the complex's bylaws, which provide that the Board is authorized to make, among other things, alterations to the common elements of the complex, including the boat slips, as long as the cost does not exceed $5,000, as well as evidence that the cost of the challenged action did not exceed $5,000, the bylaws also prescribe the notice requirements, quorum, and procedures required to be undertaken by the Board in order for it to act. For example, the bylaws require that "a majority of [the Board] shall be necessary and sufficient to constitute a quorum for the transaction of business, and an act of the majority of the [members] present at any meeting at which there is a quorum shall be the act of the Board . . . . If a quorum shall not be present at any meetings . . . [the members] present thereat may adjourn the meeting . . . until a quorum shall be present." Further, the bylaws expressly provide that "[a]ny contract, agreement or commitment made by the Board . . . shall state that it is made by the Board." Here, the invoice submitted by the Board as evidence of its decision to change the plaintiff's boat slip does not indicate that it was authorized by the Board. Simply put, the Board failed to show, prima facie, that the challenged action was its act, which requires a showing that the action was taken as a result of a decision made at a meeting convened in accordance with the bylaws of the complex, at which a quorum of the board members were present, and pursuant to the vote of a majority of the board members attending. The Board did not proffer minutes from any meeting at which the Board purported to make this decision, nor the affidavit of a board member or any other admissible evidence to demonstrate that the decision to move the dock was made by the Board pursuant to the procedures and processes contained within the bylaws of the complex (see Kaung v Board of Mgrs. of Biltmore Towers Condominium Assn., 70 AD3d at 1005-1006).
Contrary to the conclusion of my colleagues, the affidavit of the Board's general manager submitted in support of the Board's motion did not demonstrate, as a matter of law, that the business judgment rule applies. The general manager did not aver that he was a board member or that the Board ever authorized or directed him to move the dock adjacent to the plaintiff's boat slip or alter the plaintiff's boat slip. Indeed, the statement by the general manager relied upon by my colleagues in the majority as evidence that the decision was made by the Board does not even expressly articulate that the Board made the decision at issue here. The affidavit also fails to represent that any such decision occurred during a board meeting and in accordance with the Board's practices and procedures. Instead, the affidavit provides, inter alia, that "in or about December of 2012, the Board . . . solicited bids to repair the bulkhead [damaged by Hurricane Sandy,]" and that "[a]t or about the same time, the Board . . . determined that in conjunction with repairing the bulkhead, it was appropriate to remedy the encroachment of the boat in slip #51 into [the neighbor's] waters." Although the general manager also averred that "[t]o resolve the encroachment, it was decided to move the dock ramp separating slips #50 and #51 approximately three (3) feet away from [the waters of the neighbor to the complex,]" the general manager did not aver that it was the Board's decision to do so. Nor did he aver that the Board actually held a meeting in December 2012, or that any such meeting was duly noticed in accordance with the bylaws and that any action was taken upon a quorum. As noted, no minutes were submitted to reflect that any such Board meeting occurred in December 2012. I note that the general manager's artful, or perhaps, inartful, averment that "[t]o resolve the encroachment, it was decided to move the dock ramp" provides no indication of who actually made the decision to narrow the plaintiff's boat slip and increase the width of slip 51 to address the encroachment issue. Even if the sentence, read in the context of the rest of the paragraph, could be taken to mean that one or more of the board members made that decision, the failure to provide any evidence that it was made at a duly noticed meeting voted upon by a quorum of board members in accordance with the bylaws should be fatal to an award of summary judgment dismissing the plaintiff's claims on the ground that the business judgment rule applies.
Although my colleagues rely on the minutes from board meetings dated March 9 and June 29, 2013, and July 25, 2015, in determining that the Board made its prima facie case, those minutes were not submitted by the Board in support of its motion, but rather by the plaintiff in opposition. In any event, although the March 9 and June 29, 2013 minutes reflect that the Board discussed storm damage repairs, including bulkhead repairs, those minutes fail to mention the [*4]encroachment issue or the plaintiff's boat slip. Nor do the minutes of the July 25, 2015 meeting provide support for the contention that the Board had previously decided to make the change to the plaintiff's boat slip at a properly noticed meeting. Instead those minutes reflect that, at that July 2015 meeting, the plaintiff complained about the alterations that had been made to her boat slip and that the Board planned to address the issue with counsel.
Moreover, the Board did not establish, prima facie, that the decision to address the complaints of the neighbor to the complex by enlarging the boat slip of one of the complex's owners in order to allow it to contain an oversized boat at the expense of another owner's boat slip constitutes an act made in good faith, in furtherance of a legitimate purpose of the complex or that it was within the Board's scope of authority (see Matter of Beckerman v Lattingtown Harbor Prop. Owners Assn., Inc., 183 AD3d at 823; Matter of Dicker v Glen Oaks Vil. Owners, Inc., 153 AD3d 1399, 1401).
Since the Board failed to make a prima facie showing that the business judgment rule is applicable to the decision at issue here, the Board's motion for summary judgment dismissing the complaint should have been denied, regardless of the sufficiency of the opposing papers on this issue (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
Conclusion
Finally, to require a board that is seeking to assert the business judgment rule to demonstrate that it acted and did so in accordance with the terms of the applicable bylaws, is not an unreasonable burden but rather a threshold inquiry to be made before insulating a board's business decisions from liability under the guise of the business judgment rule (see Schoninger v Yardarm Beach Homeowners' Assn., 134 AD2d at 9).
As the Board here failed to make a prima facie showing that it was entitled to judgment as a matter of law dismissing the complaint on any other basis (see e.g. Bekkerman v Mount Carmel Cemetary Assn., 164 AD3d 633, 634-635; Katz v Beil, 142 AD3d 957, 965; Gedney Commons Homeowners Assn., Inc. v Davis, 85 AD3d 854, 855), the Supreme Court should have denied the Board's motion regardless of the sufficiency of the plaintiff's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 AD3d at 853).
ENTER:
Maria T. Fasulo
Clerk of the Court